IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HAROLD EUGENE HARMON ) | Bankruptcy Case No. |
| ) | 07-21292 |
| Debtor. ) | |
| ) | |
| ) | |
| Deborah Caruso, ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No. 07-02048 |
| ) | |
| Harold Eugene Harmon ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This adversary comes before the Court on the Complaint filed by Deborah Caruso ("Plaintiff"), against Harold Eugene Harmon ("Debtor"). Plaintiff argues that the debt owed to her by Debtor in the amount of $324,768.50 should be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) and that the doctrine of collateral estoppel should bar relitigation of this issue. The parties have stipulated that if the Court finds collateral estoppel inapplicable to this case, that the question of dischargeability shall be submitted to the Court upon submission of the pleadings on file in the adversary and the state court record for Case No. 04CV166044 decided in the Circuit Court of Boone County, Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that Debtor is collaterally estopped from relitigating the issue of whether Plaintiff's injury was a result of Debtor's willful and malicious conduct as those issues have necessarily been determined by the state court in the prior

litigation. The Court also finds that even if collateral estoppel were not applicable in this case, that there is more than sufficient evidence to support an independent finding from this Court that Debtor's actions caused Plaintiff a willful and malicious injury and the judgment debt is non-dischargeable pursuant to § 523(a)(6).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 2004, Plaintiff filed a petition in the Circuit Court of Boone County, Missouri, asserting that Debtor had committed a series of tortious assaults and batteries upon her. On August 23, 2007, Debtor filed for protection under Chapter 7 of the Bankruptcy Code. On December 3, 2007, Plaintiff filed this adversary proceeding, in which she alleged that Debtor is liable to her for damages, resulting from a series of assaults and batteries, which were carried out in a willful and malicious manner such that the damages she sustained are non-dischargeable pursuant to § 523(a)(6). On March 6, 2008, the Court remanded the tort claim to the state court for trial. On August 27, 2008 a trial was held in the state court and a judgment was entered finding Debtor liable to Plaintiff for assault and battery in the amount of $324,768.50. On September 17, 2008, Debtor filed a Notice of Appeal of the judgment of the circuit court, and said appeal is now pending in the Missouri Court of Appeals for the Western District of Missouri.

According to the state court trial transcript, at the time of the assault and battery which was the subject of her complaint, Plaintiff was in her mid forties and was employed as a manager/bookkeeper for a small, convenience store located just south of Columbia, Missouri in the town of Pierpont. Debtor owned two construction businesses, each of which had a charge account at the store, and he frequented the store with some regularity where either he, or his employees, would go inside the establishment to make various purchases.   Between late

December of 1999 and April 22, 2002, Debtor engaged in ten to twelve instances of physical abuse, and multiple instances of mental and emotional abuse of Plaintiff which caused her to suffer both physical and mental trauma.  Plaintiff reported to the owners of the store that she was experiencing problems with Debtor, and he was asked three separate times to leave her alone.  On each such occasion, Debtor stopped going into the store for a short period of time and then eventually he would resume his previous habit of frequenting the store and sexually harassing Plaintiff.   There are video tapes which reflect some of the behaviors described by Plaintiff, which served as evidence at the state court trial.

On April 22, 2002, Plaintiff reported the abuse to the police which resulted in Debtor's arrest.  Plaintiff continued to work at the store until October of that year.  Plaintiff has not been employed since that time.  In addition to the physical bruising that she suffered while the abuse was happening, she has since been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and she suffers with several other previously diagnosed mental conditions, which were exacerbated by the abuse.

Plaintiff's position is that the question of whether her injuries were a result of Debtor's willful and malicious conduct was necessarily determined by the state court's finding that Debtor committed the intentional torts of assault and battery.[1]  She argues that Debtor should be collaterally estopped from relitigating this issue and that the judgment debt is non-dischargeable pursuant to § 523(a)(6).  Debtor concedes that the evidence is indisputable that his conduct was

---

[1] Plaintiff also asserts that punitive damages were awarded by the state court, adding further support to her argument that the issue of malice was litigated.  However, a review of the state court record, particularly Plaintiff's Exhibit 30, which is the damages calculation, reveals that punitive damages were not awarded.

"deliberate," but argues that collateral estoppel should not bar him from litigating the issue of malice because no punitive damages were awarded and no specific finding of willfulness or maliciousness was made. Debtor asserts that this Court should consider the defenses he raised at the trial, i.e. his various psychological conditions, and the fact that punitive damages were not awarded and find, despite the finding of liability for assault and battery, that he did not have the requisite intent, nor could he have known that his actions would cause Plaintiff damages, and thus the judgment should not be non-dischargeable pursuant to § 523(a)(6).

If the Court finds that the issues of willfulness and maliciousness were not litigated in the prior adjudication, Plaintiff argues there is sufficient evidence in the state court record for this Court to make an independent finding that Debtor's conduct rose to the level of willful and malicious under § 523(a)(6), as those terms have been defined by the Eighth Circuit, and thus the judgment is non-dischargeable and Debtor disagrees. The parties waived their right to a trial and stipulated that, if collateral estoppel is inapplicable, the Court may make its determination based on a review of the state court record.

## II. DISCUSSION AND ANALYSIS

### A. Collateral Estoppel

Collateral estoppel applies to non-dischargeability proceedings under § 523(a)(6). *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). "Collateral estoppel is a legal doctrine that 'bar[s] the relitigation of factual or legal issues that were determined in a prior ... court action,' and applies to bar relititagion in federal court of issues previously determined in state court." *Johnson v. Miera*, 926 F.2d 741, 743 (8th Cir.1991). When determining whether collateral estoppel arises from a prior state court judgment, federal courts apply the substantive law of the

forum state in whose courts the prior judgment was entered. *Osborne v. Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir.2005)*; Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 219 (6th Cir.1997); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir.1997).

Missouri courts consider four factors in applying collateral estoppel: (1) the issues in the present case and the prior adjudication must be identical; (2) the judgment in the prior adjudication must be on the merits; (3) the party against whom collateral estoppel may apply participated as a party or was in privity with a party to the prior adjudication; and (4) the party against whom the doctrine may apply must have had a full and fair opportunity to litigate the issue in the prior suit. *Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 640 (8th Cir. 1999)*, Galaxy Steel & Tube, Inc. v. Douglass Coal & Wrecking, Inc.*, 928 S.W.2d 420, 422 (Mo.Ct.App.1996). The party asserting collateral estoppel has the burden of establishing that all four elements are satisfied. *Miera*, 926 F.2d at 743.

In this case, the state court has already conducted a trial on the merits, a valid judgment was entered and both parties had a full and fair opportunity to litigate. The only element of collateral estoppel in question is whether the issues sought to be precluded from relitigation-- whether Debtor willfully and maliciously injured Plaintiff--are identical to the issues that were decided by the state court. When making the determination that an issue was actually litigated and was necessary to the decision in the prior proceeding, the court should examine the entire record of the earlier case. *Miera,* 926 F.2d at 743.

In order to determine whether the issues of willfulness and maliciousness were necessarily determined by the state court's judgment of assault and battery, the Court must compare the state law definitions of assault and battery with the Eighth Circuit's definitions of willful and

malicious. If the Court concludes that the state court's finding of liability for assault and battery necessarily required a finding that the assault and battery was also "willful and malicious", as defined by federal law, the Debtor is collaterally estopped from contesting dischargeability.

Assault is defined as "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Phelps v. Bross*, 73 S.W.3d 651, 655 (Mo.App. E.D.2002). "The assault is complete, 'if the intent, with the present means of carrying it into effect, exists and preparations therefor have been made' . . . even though there has been no actual violence to the person." *Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo.App. E.D.2001). "A battery is intended, offensive bodily contact with another." *Geiger v. Bowersox*, 974 S.W.2d 513, 515 (Mo.App. E.D.1998).

The state court judgment contains no specific findings of fact, however, the Court's review of the trial transcript reveals a plethora of facts from which the state court could have based its ultimate finding of liability for assault and battery as follows:

> 1. In late December of 1999, Debtor asked Plaintiff for a New Year's Eve kiss. Plaintiff stated she would not kiss Debtor. Debtor ignored Plaintiff's response, grabbed her by the neck and shoved his tongue down her throat. (Tr. pg. 59)
>
> 2. Debtor pulled down his pants, exposed his penis and grabbed Plaintiff's hand, forcing her to touch it. (Tr. pg. 63)
>
> 3. Debtor informed Plaintiff that he just broke up with his girlfriend and that she was going to be his next girlfriend. He told her that he "ain't never had me a red-head before." (Tr. pg. 65)
>
> 4. Debtor told Plaintiff that he could satisfy her sexually and described how he would do that. (Tr. Pg 66-7)
>
> 6. Debtor told Plaintiff that he would "beat her" on at least 5 separate occasions. (Tr. pg. 67)
>
> 7. If Plaintiff did not cooperate with Debtor's requests, he became angry and would grab

6

her by her hair and yank her toward him.

8. There were approximately ten to twelve separate incidents of physical encounters which included Debtor roughly grabbing a hold of Plaintiff by the arm, hair or throat to pull her to him, sticking his hands inside her clothes, inside her underwear or inside her bra, groping, scratching, poking or pinching her genitalia, hitting her with his hands or sticking his tongue down her throat. (Tr. pg. 69-73)

9. On one occasion, Debtor followed Plaintiff home and attempted to force his way inside when she opened her door. Several times he followed her when she left the store and one time he caused her to run her vehicle off the road. (Tr. pg. 89)

The question is whether litigation in the state court, which contemplated the above instances of abuse and resulted in a finding of liability for assault and battery, also resolves the question of whether Plaintiff's injuries were willfully and maliciously caused such that the debt arising from said actions is non-dischargeable pursuant to § 523(a)(6).

### B. Non-dischargeability under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides :

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

Under § 523(a)(6), a debtor is not discharged of any debt for "willful and malicious injury" to another. *Johnson v. Fors*, 259 B.R. 131, 137 (B.A.P. 8th Cir.2001). In the Eighth Circuit, the terms "willful" and "malicious" are two distinct elements, each of which must be shown to establish an exception to discharge. *Scarborough*, 171 F.3d at 640.

### 1. Willfullness

Willfulness under § 523(a)(6) requires intent to injure and calls to mind the category of

intentional torts. *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997).

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury .... the (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts.

Kawaauhau *v. Geiger*, 523 U.S. 57, 61 (1998) affirming the Eighth Circuit's opinion in *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997) (en banc) (debt cannot be exempt from discharge unless it is based on an intentional tort); *Adams v. Zentz*, 157 B.R. 141, 144 (Bankr.W.D.Mo.1993). Assault and battery are intentional torts. *Hockensmith v. Brown*, 929 S.W.2d 840, 845 (Mo.App. W.D.1996). "To commit an intentional tort, a person must intend the act and the resulting harm." *Armoneit*, 59 S.W.3d at 632 *citing State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 112 (Mo.App.1984) *citing* Restatement (Second) of Torts section 870 cmt. B (1977). "An intentional tort requires that the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from [his act]." *Erickson v. Halverson*, 226 B.R. 22, 27 (Bankr. D. Minn.1998).

Debtor was found liable for the intentional torts of assault and battery. "Debts that are based upon traditional intentional torts such as assault and battery are generally regarded by bankruptcy courts as being non-dischargeable." *Thompson v. Kelly (In re Kelly)*, 238 B.R. 156, 160 (Bankr. E.D. Mo.1999) *citing In re Bumann*, 147 B.R. 44, 47 (Bankr.D.N.D.1992). Willfulness is established by the fact that the judgment debt arises from the commission of the intentional torts of assault and battery because, one who commits an intentional tort intends not only the act itself but the resulting harm. *See Jones v. Meyer*, 1999 WL 33520525 (Bankr. D.N.D.1999) *citing* Judge Bowman of the Eighth Circuit Court of Appeals' dissent in *In re Hartley*, 869 F.2d 394, 396 (8th Cir.1989) ("A claim for injury resulting from assault ... should

always be nondischargeable under § 523(a)(6). I doubt that Congress intended that claims for injuries resulting from intentional torts should be dischargeable. Certainly, we should not lightly infer that Congress has created a safe haven in the Bankruptcy Code for intentional tortfeasors."). In *Halverson*, the Court found that because the debtor had committed assault, battery and false imprisonment, that his conduct was willful under § 523(a)(6). *Halverson*, 226 B.R. at 29. In *Meyer*, a case involving unwanted sexual contact, the debtor was found liable for assault and battery for cornering the plaintiff, lifting her skirt and touching her leg with his hand. *See Meyer*, 1999 WL at *4. The bankruptcy court found that the debtor's conduct in committing assault and battery against the plaintiff was willful under § 523(a)(6). *Id.* Here, the state court had an abundance of evidence of Debtor attempting to injure Plaintiff where he had the capability of carrying out his attempts and evidence of at least 10-12 instances where he engaged in offensive bodily contact with Plaintiff. Debtor's defense of early Alzheimer's, dementia and left-temporal lobe hyperactivity was presented to the state court and, based on the state court's ultimate finding of liability, was rejected. This Court finds that the issue of whether Debtor's actions were "willful," i.e. whether he intended to injure Plaintiff when he was committing the numerous acts of assault and battery described above, was necessarily already litigated and Debtor is, therefore, collaterally estopped from relitigating this prong of the § 523(a)(6) analysis.

### 2. Maliciousness

Having determined that the issue of willfulness was already litigated by the state court, the question now is whether the state court also necessarily already litigated the issue of whether Debtor's conduct was malicious under § 523(a)(6). "An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or

almost certain to cause harm." *Stage*, 321 B.R. at 493 *citing Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir.1996); *see also e.g., Miera* 926 F.2d at 743; *Barclays American/Bus. Credit Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985); *Mercury Marine Acceptance Corp. v. Wheeler (In re Wheeler)*, 96 B.R. 201, 205 (Bankr.W.D.Mo.1988). "Malicious for purposes of § 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act." *Halverson*, 226 B.R. at 26. "A wrongful act is malicious if...there exists a 'knowing wrongfulness or knowing disregard of the rights of another'." *Fors*, 259 B.R. at 137 *citing Erickson v. Roehrich (In re Roehrich)*, 169 B.R. 941, 945 (Bankr.D.N.D.1994). In order to have a meaning independent from willful, "... malice must apply only to conduct more culpable than that which is in reckless disregard of creditors' interests and expectancies." *Halverson*, 226 B.R. at 26 *citing Long*, 774 F.2d at 881.

     In *Miera*, a judge gave his court reporter an unwanted kiss. The debtor was found liable for battery and the bankruptcy court determined that the judgment debt was non-dischargeable pursuant to § 523(a)(6). *Miera*, 926 F.2d at 744. The bankruptcy court's finding of malice was based on the fact that the plaintiff was forced repeatedly to resist the debtor's advances, that the plaintiff had made it clear that said advancements were unwanted, and that the debtor was aware that the plaintiff would be harmed by an unwelcome bodily contact, but nevertheless subjected the plaintiff to an unwanted kiss. *Id*. In this case, there was an abundance of evidence presented to the state court to show that Plaintiff endured physical, emotional and verbal abuse by Debtor for over two years. There is evidence of Debtor waiting outside the store until Plaintiff was alone, evidence of him grabbing her by her hair, neck and arms to pull her toward him to fondle her, evidence of him threatening to beat her if she did not cooperate, evidence of him repeatedly

forcing his tongue into her mouth and exposing his genitals to her while telling her the various ways he could satisfy her sexually. The evidence in the state court record clearly establishes that Debtor was specifically targeting Plaintiff. Although there was no specific finding that Debtor knew that his tortious conduct was certain or almost certain to cause her harm, the sheer number of separate instances of abuse alone establishes that Debtor's actions were more culpable than that which could be considered effectuated in a reckless manner, and there is no reasonable conclusion other than that he knew his actions were causing her harm. He even admitted to Plaintiff that he knew what he was doing was wrong and told her he was going to stop. (Tr. pg. 84). The Court is convinced that the state court, in finding Debtor liable for assault and battery based on his egregious conduct toward Plaintiff, necessarily already litigated the question of whether Debtor was targeting Plaintiff, whether his actions were more culpable than that which would be considered in reckless disregard of her rights, and whether Debtor's conduct toward Plaintiff was certain or almost certain to cause her harm. Debtor is, therefore, collaterally estopped from relitigating the issue of maliciousness as that issue was already necessarily decided in the prior litigation.

Despite the overwhelming evidence that the issues of willfulness and maliciousness were already necessarily litigated by the state court, Debtor asserts that because there was no award of punitive damages or a specific finding that his actions were willful and malicious, that collateral estoppel is inappropriate in this case. Debtor asserts that the fact that his expert witness testified that he could not formulate an opinion as to whether Debtor intended any psychological trauma or mental health damage to Plaintiff supports his position that Plaintiff failed to prove that his actions rose to the level of willful and malicious. He also argues that the state court did not

11

specifically find that he intended to harm Plaintiff and that this Court may not infer intent from his behavior and, therefore, he should not be precluded from litigating the issues of willful and malicious.  The Court disagrees.  Although the Court is thoroughly convinced that the issues of willful and malicious have already been litigated and decided by the state court and that collateral estoppel applies, because the parties consented to this Court making an independent determination based on a review of the record, the Court also finds, independently, that there is more than enough evidence to support a finding of willful and malicious conduct.   The state court record may not include a specific finding that the circuit court judge necessarily decided that Debtor intended to cause injury to Plaintiff.  However, "an act may be found to be malicious even in the absence of a specific, subjective intent to injure."  *Fors*, 259 B.R. at 137; *see also Halverson*, 226 B.R. at 30.  In assessing whether intentional harm has been established, the Court may consider "the likelihood of harm in an objective sense."  *Long*, 774 F.2d at 881; *Halverson*, 226 B.R. at 26.  In *Miera*, the United States Court of Appeals in the Eighth Circuit affirmed the proposition that "malice, or intent to harm, in a sexual intentional tort is self-evident, either because the tortfeasor knows his conduct is certain or almost certain to cause harm, or because he should know and therefore the intent is inferred as a matter of law." *Halverson*, 226 B.R. at 30 *citing Miera* 926 F.2d at 743.   On this record, although it is clearly not necessary based on Debtor's own admission that he knew what he was doing was wrong and on the simple fact that there is no plausible way that he did not know his physical and verbal abuse of Plaintiff for over two years would cause her harm, the Court could certainly infer an intent to injure Plaintiff and find, in an objective sense, that assault and battery, as it occurred here, is highly likely to cause harm.

Debtor's defense is that Plaintiff consented to his sexual advances, that she asked to see his genitals and that she encouraged his lewd, intimidating sexual comments. The Court finds his testimony self-serving and utterly unbelievable. The Court is equally unpersuaded by Debtor's argument that, because he was diagnosed as having mild memory problems, that he showed signs of early Alzheimer's and dementia and that he exhibited left-temporal-lobe hyperactivity, he could not have been certain or almost certain that his actions would cause Plaintiff harm. Even his own expert witness testified that he was not able to conclude that these conditions affected his ability to formulate an intent to cause harm.[2] At best, the doctor testified that Debtor's conditions *could* have caused him to act out inappropriately in a sexual manner, but that because he does not show signs of hyperactivity in both temporal lobes, the doctor did not find it likely that the temporal-lobe issue caused him to act out sexually.[3] The Court finds no credible evidence to support Debtor's contention that he could not have formulated the intent necessary for a finding that he maliciously caused Plaintiff's injuries. His actions were directed specifically at Plaintiff, his multiple physical contacts with her were unwanted and offensive, and there is no believable evidence to support his contention that he did not know his actions were certain to cause her harm. For all of these reasons and those outlined above, the Court finds that, even if collateral estoppel were not applicable in this case, that there is more than enough evidence in the record to support an independent finding by this Court that Debtor's actions were willful and malicious and the judgment debt is non-dischargeable pursuant to § 523(a)(6).

### III. CONCLUSION AND ORDER

---

[2] Deposition of Sudhir Batchu, pg. 11 - 18.

[3] Deposition of Sudhir Batchu, pg. 13 - 15.

For all the reasons cited above, the Court finds that the doctrine of collateral estoppel is applicable to the judgment rendered by the state court. The Court finds that the state court, in finding Debtor liable for the intentional torts of assault and battery, necessarily litigated the issues of willfulness and maliciousness as those terms have been defined by the Eighth Circuit. Because the judgment debt in the amount of $324,768.50 resulted from Debtor's willful and malicious conduct, it is non-dischargeable pursuant to § 523(a)(6). Alternatively, the Court finds that Debtor's actions caused a willful and malicious injury to Plaintiff and the judgment debt entered against him by the state court is non-dischargeable pursuant to § 523(a)(6).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:   April 15, 2009            /s/ Dennis R. Dow
                                   THE HONORABLE DENNIS R. DOW
                                   UNITED STATES BANKRUPTCY JUDGE


Copies to:
William D. Rotts
Harry D. Boul
Harvey A. Hoffman